IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-01769-MSK-CBS

A MAJOR DIFFERENCE, INC., a Colorado corporation,

      Plaintiff,

v.

ERCHONIA MEDICAL, INC., an Arizona corporation,
ERCHONIA MEDICAL LASERS, L.L.C., an Arizona limited liability company,
ERCHONIA PATENT HOLDINGS, L.L.C., an Arizona limited liability company,

      Defendants,

and

ERCHONIA PATENT HOLDINGS, L.L.C., an Arizona limited liability company,
ERCHONIA MEDICAL, INC., an Arizona corporation,

      Counterclaimants and Third-Party Plaintiffs,

v.

A MAJOR DIFFERENCE, INC., a Colorado corporation,
ROBERT E. MORONEY, an individual,
ROBERT E. MORONEY, L.L.C., a Colorado limited liability company,
MIKI SMITH, an individual,
KMS MARKETING, INC., a Colorado corporation,
STARGATE INTERNATIONAL, INC., a Colorado corporation,

      Counterdefendant and Third-Party Defendants.

---

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

---

THIS MATTER comes before the Court on the Plaintiff's Motion for Summary Judgment

of Noninfringement (#162). A response (#173) was filed by the Defendants and

Counterclaimants, who are Erchonia Medical, Inc., Erchonia Medial Lasers, L.L.C., and Erchonia

Patent Holdings, L.L.C. (collectively, "Erchonia").  The Plaintiff, A Major Difference, Inc. ("AMD") replied (#174).  Having considered the motion, the response, the reply, and the documentary evidence submitted by the parties, the Court finds and concludes as follows.

## I.  Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II. Issue Presented

Erchonia asserts a counterclaim against AMD for infringement of U.S. Patent No. 6,746,473 ("the '473 patent").  It alleges that AMD is selling two lasers –  the Quantum System Laser and the Excalibur Laser – which infringe upon the '473 patent.

AMD seeks a partial summary judgment declaring that the Quantum System Laser does not infringe upon the '473 patent.[1]  The issue presented is whether a trial is required .

## III.  The '473 Patent

Erchonia alleges that the Quantum System Laser infringes upon Claim 1(c) of the '473 patent because it incorporates an optical arrangement attached to the wand and the optical arrangement changes the appearance or form of each of the laser beams.  Claim 1(c) of the '473 patent states:

> 1. A laser device comprising: . . .
>
> c) an optical arrangement attached to the wand for receiving the laser beams and for transforming each of the laser beams into a desired spot shape.

Last January, the Court issued an Order (#158) construing disputed terms in the '473

---

[1] At the time the motion was filed, Erchonia's counterclaim only alleged infringement by the Quantum System Laser.  Therefore, the motion does not pertain to the Excalibur Laser.

patent, as follows:

      1.      "Optical arrangement" means "two or more optical elements."

      2.      "Attached to the wand" means "fastened, secured, or joined to the wand directly."

      3.      "Transforming each of the laser beams" means "changing the appearance or form of the laser beams."

      4.      "Desired spot shape" means "a spot shape desired by anyone."[2]

## IV.  Material Facts

Based upon the evidence submitted, which the Court construes most favorably to Erchonia, the Court finds for purposes of this motion that:

      1.      AMD sells a laser device known as the Quantum System Laser.

      2.      The Quantum System Laser has two different probe designs, referred to herein as the original and revised probe designs.

---

[2] The Court also found that "substantially linear" means "a line having minimal width."  Such term is not present in Claim 1(c).

3.    The original probe design is shown below, as Diagram 1.



**Diagram 1 - Original Probe Design**

4.     The revised probe design is shown below, as Diagram 2.



**Diagram 2 - Revised Probe Design**

5.      Both probe designs include a hollow metal tube[3] which houses a number of mechanical and electrical components.  A puck[4] slides into the end of the tube to serve as a cap. The puck is connected to threaded rods and has four holes where cylindrical, cartridge-like laser diode modules[5] are placed.

6.      With the original probe design, the laser diode modules are secured to the puck using screws[6] which penetrate the outer metal casing of the puck and hold the modules in place.

7.      With the revised design, the modules are captured in the puck's holes between a window on one end and a washer on the other.  The washer is held in place by a screw.[7]  The modules are not fastened to the puck with screws and instead rest securely in the puck's holes.

---

[3] The tube is designated on both diagrams with the number "1".

[4] The puck is designated on both diagrams as "2".

[5] The laser diode modules are designated on both diagrams as "8".

[6] On Diagram 1, the screws are designated as "14".

[7] On Diagram 2, the window is "5", the washer is "20", and the screw is "22".

8.      The parties agree that the optical arrangement "consists of a relatively thick plano-convex lens, a spacer ring, a meniscus lens, and a relatively thin near plano-convex lens."  This arrangement is depicted in Diagram 3, below.



**Diagram 3 - Optical Arrangement**

9.      The optical arrangement is held together inside a housing assembly, also referred to as a lens assembly.  A laser emits a beam through the lens assembly.  The laser and lens assembly are connected together and form the laser diode module.  According to Erchonia's expert, John Greivenkamp, Ph.D., the lenses transform the laser beam into a circular beam spot.

10.     During discovery, Erchonia admitted that the tube "corresponds to the 'wand' described in the specification of the '473 patent."  Its expert, Dr. Greivenkamp, characterizes the

tube as the "body of the wand," but also characterizes the wand as consisting of both inner and outer assemblies, inclusive of the puck.

## V.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law determines what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v.*

*Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is no genuine dispute as to any material fact, no trial is required because the court applies the law to the undisputed facts and enters judgment.  If there is a genuine dispute as to material fact, a trial is required.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## VI.  Analysis

On the counterclaim of infringement, Erchonia bears the burden of proof.  AMD argues that Erchonia cannot produce evidence that the Quantum System Laser infringes upon the '473 patent because the Laser does not include: (1) two or more optical elements fastened, secured or joined to the wand directly; or (2) two or more optical elements that receive and then change the appearance or form of the spot shape of the laser beams emitted by the laser energy source. AMD also argues that Erchonia's claim is limited to one of literal infringement, rather than infringement under the doctrine of equivalents, because Erchonia did not disclose equivalency as a basis for its claim in response to propounded interrogatories.

Erchonia responds that the Quantum System Laser infringes upon the '473 patent, both literally and under the doctrine of equivalents.  Erchonia also asserts that it is not barred from arguing infringement under the doctrine of equivalents because the interrogatory referenced by AMD only sought disclosure of facts supporting infringement, not legal theories.

To establish a *prima facie* infringement claim, Erchonia bears the burden of producing evidence that each limitation in Claim 1(c) is present in the Quantum System Laser, "either literally or by a substantial equivalent." *See Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1357 (Fed. Cir. 2005), *cert. denied*, 126 S. Ct. 1167 (2006). Therefore, the Court begins with the Claim language, as construed by this Court.

For the Quantum System Laser to literally infringe upon the '473 patent, it must be:

> 1. A laser device comprising: . . .
>
> > c) an optical arrangement [*two or more optical elements*] attached to the wand [*fastened, secured, or joined to the wand directly*] for receiving the laser beams and for transforming each of the laser beams [*changing the appearance or form of the laser beams*] into a desired spot shape.

The parties' briefs and evidence demonstrate that they disagree as to: (1) whether the "wand" consists solely of the hollow metal tube, or whether it includes the entire assembly including the puck; and (2) whether the optical arrangement present in the Quantum System Laser changes the appearance or form of the laser beam into a desired spot shape.

The Court construes the evidence in the light most favorable to Erchonia. In that light, Erchonia has produced sufficient evidence to support a *prima facie* claim of literal infringement.[8] Its evidence demonstrates that the wand consists of the entire assembly (not just the hollow tube), that the optical arrangement is fastened directly to the puck portion of the wand as to both the original and revised probe designs, and that the optical arrangement transforms the laser beams into a desired spot shape as the laser beam passes through the lens assembly.

---

[8] Therefore, the Court does not determine whether there would be infringement under the doctrine of equivalents, or whether such a claim has been waived.

10

AMD argues that if the Court does not conclude that the wand consists only of the hollow tube, then there is an additional claim construction issue which requires determination – whether the term "wand" connotes a hollow housing tube, or whether it connotes both the tube and its enclosed components.  Erchonia disagrees and contends that whether the puck is part of the wand presents a factual question for the jury.

Both parties are correct.  The Court agrees with AMD that the definition of "wand" presents a claim construction issue which must be resolved without regard to the allegedly infringing device.  Erchonia is also correct that it will be up to the jury to determine whether the puck is part of the wand once such term is defined.

The Court previously held a *Markman*[9] hearing for purposes of construing other disputed terms of the '473 patent.  The parties did not raise any claim construction issues with regard to the meaning of the word "wand."

The Court will give them the opportunity to address this issue, only, by supplemental briefing.  In their briefs, the parties shall address: (1) whether interpretation of the word "wand" should be based on intrinsic or extrinsic evidence; and (2) whether an evidentiary hearing is needed and the anticipated length of such hearing.

**IT IS THEREFORE ORDERED** that:

(1)     The Plaintiff's Motion for Summary Judgment of Noninfringement (**#162**) is

        **DENIED**.

(2)     On or before **September 11, 2006** the parties shall simultaneously file briefs

        addressing the construction of the term "wand", whether an evidentiary hearing is

---

[9] *Markman v. Westview Inst., Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

needed on that claim construction issue, and if so, the length of such hearing and

whether it must be conducted prior to trial.  No responsive briefs will be filed.

Dated this 29th day of August, 2006

**BY THE COURT:**

Marcia S. Krieger
United States District Judge